UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VINCENT RIVERA,<br><br>    Petitioner,<br><br>    v.<br><br>S. PEERY,<br><br>    Respondent. | No. 2:16-cv-0856 KJM CKD P<br><br>FINDINGS AND RECOMMENDATIONS |

Petitioner is a California prisoner proceeding pro se with a second amended petition for writ of habeas corpus (ECF No. 41) filed pursuant to 28 U.S.C. § 2254. Petitioner stands convicted of one count of first-degree murder, three counts of attempted murder, and one count of possession of a firearm by a felon. Petitioner is serving an aggregate indeterminate sentence of 96 years-to-life consecutive to a 2-year determinate sentence. CT at 212-14. Respondent has filed a motion to dismiss some of the claims appearing in the second amended petition as time-barred.

1. Limitations Period Runs As To New Claims

Title 28 U.S.C. § 2244(d)(1) provides:

> A 1–year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—

/////

1

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

Petitioner appealed his convictions and sentences in the California Court of Appeal. Resp't's Lodged Doc. No. 11. After his convictions and sentences were affirmed (id., No. 14), petitioner sought review in the California Supreme Court (id., No. 15). The California Supreme Court denied review on June 17, 2015. Id., No. 16.

With respect to a California criminal conviction for which defendant appealed and then sought review of the denial of the appeal in the California Supreme Court, direct review concludes pursuant to § 2244(d)(1)(A) when time expires for petitioner to file a petition for writ of certiorari in the United States Supreme Court concerning the denial of the petition for review. See Bowen v. Roe, 188 F.3d 1157, 1158–59 (9th Cir.1999) ("We hold that the period of 'direct review' in 28 U.S.C. § 2244(d)(1)(A) includes the period within which a petitioner can file a petition for a writ of certiorari from the United States Supreme Court, whether or not the petitioner actually files such a petition."). Here, that date was September 15, 2015.

Petitioner disagrees that judgment was final on September 15, 2015 for purposes of § 2244(d)(1)(A). He points to motions filed by his direct appeal counsel in the California Court of Appeal and the Superior Court of Sacramento County (ECF No. 32 at 102-166), as well as an appeal of the denial of the Superior Court motion back in the Court of Appeal (id. at 169-190), and a petition in the California Supreme Court seeking review of the denial of the appeal (id. 191-207). Petitioner claims these motions, appeals and proceedings thereon should extend the date of final judgment to April 11, 2017. Essentially, the point of the motions and appeals was for

release of bullets from evidence for additional examination and appointment of an expert to conduct the examination. Nothing before the court suggests counsel ever asked any court to vacate judgment or any other orders entered prior to the denial of petitioner's original petition for review or that judgement or any other orders entered prior to the denial of petitioner's original petition for review were vacated. In light of the foregoing, petitioner's argument that judgment was not final on September 15, 2015 for purposes of § 2244(d)(1)(A) should be rejected.

Petitioner's original petition for writ of habeas corpus arrived here on April 25, 2016, well within the limitations period. In the original petition, petitioner asserted claims raised by him on direct appeal in California including:

1. Trial counsel rendered ineffective assistance by failing to introduce evidence to corroborate petitioner's self-defense claim; and

2. The trial court erred by removing a juror without substantial evidence that she was unable to perform her duties as a juror, depriving petitioner of due process and his right to a jury trial under the Sixth and Fourteenth Amendments.

These claims appear in petitioner's second amended petition as well and are not time-barred. All of the other claims in the second amended petition were before the court no earlier than March 19, 2017, when petitioner submitted a motion for leave to amend and a proposed amended petition.[1] At that point, however, the limitation period had run under § 2244(d)(1)(A).

2. Statutory Tolling

Petitioner asserts his new claims are saved by 28 U.S.C. § 2244(d)(2) which provides that "the time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." However, petitioner filed no such applications prior to the running of the limitations period. Petitioner again points to efforts by his direct appeal counsel to have further testing conducted on bullets in evidence. But, in the motions and appeals filed by counsel, counsel never sought review of judgment in any respect either through

---

[1] Under Houston v. Lack, 487 U.S. 266, 270 (1988), court documents submitted by prisoners are generally considered filed on the day the document is submitted to a prison official for mailing.

3

California's collateral review process, Cal. Penal Code § 1473, et seq., or otherwise. Accordingly, tolling with respect to the time the motions and appeals thereon were pending is not available under 28 U.S.C. § 2244(d)(2). See Ramirez v. Yates, 571 F.3d 993, 999-1000 (9th Cir. 2009) (discovery motions seeking material which might have been useful in later proceedings did not statutorily toll the limitations period as the motions did not challenge a conviction).

3. Actual Innocence

Finally, petitioner argues the limitations period applicable to this action should be waived under the "actual innocence" exception. The Supreme Court has found that a federal habeas petitioner may have otherwise time-barred claims heard if a credible showing of "actual innocence" is made. McQuiggin v. Perkins, 569 U.S. 383, 393 (2017). A credible showing of "actual innocence" occurs when a prisoner shows that it is "more likely than not that no reasonable juror would have convicted him in light of the new evidence." Id. at 399. The new evidence must be "reliable." Schlup v. Delo, 513 U.S. 298, 324 (1995). "New" and "reliable' evidence" might include "exculpatory scientific evidence," "trustworthy eyewitness accounts," or "critical physical evidence." Id. "Actual innocence means factual innocence, not mere legal insufficiency." Bousley v. United States, 523 U.S. 614, 623 (1998).

On direct appeal, the California Court of Appeal summarized the facts presented at petitioner's trial as follows:

> A. *Background For All Charged Crimes*
>
> Rivera and [Fred] Huante committed the charged crimes as revenge for drugs that were robbed from Huante. The facts behind the robbery were as follows: In late February or early March 2011, brothers Michael Flores and Frankie Flores and others were hanging out in Frankie's 1996 black Chevy Impala near a park, when Huante came up to Frankie Flores and asked if he wanted to buy cocaine. Huante showed Frankie Flores the cocaine, and the two exchanged telephone numbers.
>
> Later, Frankie Flores told Michael Flores they were going to rob Huante of some drugs. They took their mother's Trailblazer because Huante had seen Frankie's black Chevy Impala. Michael Flores drove Frankie Flores and some others in the Trailblazer toward the park. Frankie Flores telephoned Huante, who then showed up with half an ounce of cocaine. Frankie Flores took the cocaine, pointed a gun at Huante, and then Michael Flores drove away fast. As they fled, Michael Flores heard five gunshots behind them.

B. *The Attempted Murders Of The Amaro Brothers on March 27, 2011*

On March 27, 2011, Paul Amaro was driving his black Chevy Impala with his brother Aaron Amaro in the front seat, when Paul heard a "loud noise." Paul Amaro saw a man, whom he later identified as Huante in a photographic lineup, shooting at him and his brother. From a separate lineup, Paul Amaro identified Rivera as the driver of the car Huante was in. He did not know either Huante or Rivera. Paul Amaro had met Frankie Flores at a family party once and realized they drove identical cars. Aaron Amaro was shot in the leg, had to have surgery, and was on crutches for two to three months.

C. *The Murder Of Frankie Flores And Attempted Murder Of Michael Flores On April 14, 2011.*

On April 14, 2011, Frankie Flores drove himself and his brother Michael Flores in his black Impala to a strip mall. When they got to the strip mall, they stayed talking inside the car. A truck pulled up alongside them, and the driver (whom Michael Flores identified as Rivera) pulled out a gun. Michael Flores told his brother, "That dude's got a gun. Start the car. Let's leave." Frankie Flores started up the Impala. Rivera hopped out of the truck, went up to the Impala's driver side window, and asked if the driver was "Frankie." Frankie said, "No. You got the wrong person." Rivera called to his passenger in the truck (whom Michael Flores identified as Huante) and asked, "'Is that him?'" Huante got out of the truck and ran around to the back of the truck. Frankie Flores put his Impala in reverse, and as he did, Rivera started shooting. Frankie Flores got shot six times, including fatal shots to his lung and heart. Frankie Flores died within minutes of being shot. According to Michael Flores, he or his brother did not have a weapon on them or near them at the time of the fatal shooting.

Valentino Hernandez and his mother, Toni Hernandez, saw the shooting while in their car at the strip mall's parking lot. Toni Hernandez heard Rivera say to Huante, "Come here. Look at what this mother-fucker has on his lap." Later, Valentino Hernandez was talking with his mother and, according to Toni Hernandez, Valentino said "'[one of the Flores brothers] had a gun on his lap."[2] They drove out of the parking lot fast after the shooting started.

A ballistics expert determined that the expended bullets from the March 27 shooting and the April 14 shooting were discharged from the same firearm.

Resp't's Lodged Doc. 14 at 2-4.

/////

---

[2] The court instructed the jury to consider this statement for Valentino Hernandez's and Toni Hernandez's states of mind and not the truth of the matter. Rivera testified at trial that passenger Michael Flores had what looked like a gun in his hand.

5

1    The court notes that the portion of the Court of Appeal's opinion in which it is indicated
2    that Valentino Hernandez told his mother Toni that one of the Flores brothers had a gun is
3    misleading.  In the record the quoted statement appears as more of a question by Valentino to his
4    mother as they were trying to figure out what petitioner meant when he yelled, "Come here.
5    Look at what this mother-fucker has on his lap."  RT at 707-708, 714-715.  In any case, during
6    his testimony, Valentino Hernandez specifically indicated that as petitioner confronted the Flores
7    brothers, he could not see what was going on inside their car because the windows were tinted
8    and he could only see through a crack in one of the windows.  RT at 550-183.  Near the end of
9    her testimony, Toni Hernandez indicated that she and her son merely speculated as to whether
10   one of Flores brothers had a gun given that they heard petitioner say something like, "Come here.
11   Look at what this mother-fucker has on his lap," and given the fact that petitioner shot into the
12   Impala.  RT at 707-715.

13        In his petition, petitioner argues that some evidence should not have been admitted at trial.
14   Again, a finding of "actual innocence" resulting in waiver of the applicable limitations period can
15   only be based upon "new" and "reliable" evidence, not simply legal argument as to whether the
16   evidence which was presented was properly admitted.

17        As for <u>new</u> evidence, evidence not presented at trial, petitioner points to circumstantial
18   evidence, such as Frankie Flores's membership in a gang, and testimony indicating that Michael
19   Flores left the scene of the shooting shortly before police arrived, which petitioner believes
20   supports his claim that Michael Flores had a gun in his hand before and while petitioner shot into
21   the black Impala.  Nonetheless, it is still not likely that Michael Flores had a gun, with the most
22   compelling factor being that Flores did not return fire when petitioner shot at him.  Also, there is
23   still no evidence that anyone except petitioner saw a gun, and his assertion regarding this point is
24   self-serving.  Finally, if Michael Flores did have a gun in his lap it would not have made sense for
25   petitioner to call his brother, sitting safely in petitioner's car, to come out of the car and look at it.

26        Petitioner's ultimate's goal is to establish that he acted in self-defense.  But even
27   petitioner does not assert that a gun was ever pointed at him.  Indeed, it was petitioner who
28   approached the Flores brothers while carrying a gun, and there is no evidence that petitioner ever

6

behaved as if he were in fear for his life.  Further, there is evidence that petitioner shot at the black Impala as Frankie Flores was attempting to retreat.  Finally, petitioner shot Frankie Flores six times, despite petitioner's claim that he saw Michael Flores with a gun in his hand.

Petitioner also provides an affidavit from trial witness Lashay Dixon, the mother of children fathered by petitioner's half-brother Daniel Dawes.  ECF No. 51 at 24-25.  In the affidavit, Ms. Dixon indicates she made multiple false statements during trial and the investigation of the crimes for which petitioner was charged because of pressure put on her by law enforcement.  But, as acknowledged by petitioner, she indicated that at trial as well.  To the extent Ms. Dixon is claiming she told lies other than the lies specifically identified by her in her testimony, the new evidence does nothing to support petitioner's claim of actual innocence.

4. Conclusion

For all these reasons, the court will recommend that respondent's motion to dismiss be granted and that all claims in petitioner's second amended petition for writ of habeas corpus other than the two claims identified above which appear in petitioner's original petition for writ of habeas corpus, be dismissed as time-barred.

In accordance with the above, IT IS HEREBY RECOMMENDED that:

1. Respondent's motion to dismiss (ECF No. 45) be granted;

2. All claims appearing in petitioner's second amended petition for writ of habeas corpus except part 1 of claim 2 and claim 4 be dismissed.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the

/////

/////

/////

/////

objections shall be served and filed within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

Dated:  January 29, 2020

/s/ Carolyn K. Delaney
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

1
rive0856.sol