IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VINCENT RIVERA,<br><br>             Petitioner,<br><br>vs.<br><br>CRAIG KOENIG, Warden, Correctional Training Center–Soledad,[1]<br><br>             Respondent. | No. 2:16-cv-00856-JKS<br><br>MEMORANDUM DECISION |

Vincent Rivera, a state prisoner proceeding *pro se*, filed a Petition for a Writ of Habeas Corpus with this Court pursuant to 28 U.S.C. § 2254. Rivera is in the custody of the California Department of Corrections and Rehabilitation and incarcerated at Correctional Training Facility–Soledad. Respondent has answered, and Rivera has not replied.

I. BACKGROUND/PRIOR PROCEEDINGS

On June 5, 2012, Rivera, along with co-defendant Fred Huante, was charged with the first-degree murder of Frankie Flores and the attempted murders of Michael Flores, Aaron Amaro, and Paul Amaro in connection with two shootings less than a month apart, both in retaliation for stolen drugs. The information also charged Rivera, the shooter in the Flores murder, with discharge of a firearm at an occupied motor vehicle and being a felon in possession of a firearm, and included as special allegations that Rivera personally discharged a firearm causing death and great bodily injury. Rivera and Huante proceeded to a joint jury trial. On

---

[1] Craig Koenig, Warden, Correctional Training Facility–Soledad, is substituted for S. Peery, Warden, California Correctional Center. FED. R. CIV. P. 25(c).

direct appeal of his conviction, the California Court of Appeal recounted the following facts underlying the charges against Rivera and the evidence presented at trial:

## A
## Background for All Charged Crimes

Rivera and Huante committed the charged crimes as revenge for the robbery of drugs from Huante. The facts behind that robbery were as follows: In late February or early March 2011, brothers Michael Flores and Frankie Flores and others were hanging out in Frankie's 1996 black Chevrolet Impala near a park, when Huante came up to Frankie Flores and asked if he wanted to buy cocaine. Huante showed Frankie Flores the cocaine, and the two exchanged telephone numbers.

Later, Frankie Flores told Michael Flores they were going to rob Huante of some drugs. They took their mother's Trailblazer because Huante had seen Frankie's black Chevrolet Impala. Michael Flores drove Frankie Flores and some others in the Trailblazer toward the park. Frankie Flores telephoned Huante, who then showed up with a half ounce of cocaine. Frankie Flores took the cocaine, pointed a gun at Huante, and then Michael Flores quickly drove them away. As they fled, Michael Flores heard five gunshots behind them.

## B
## The Attempted Murders of the Amaro Brothers on March 27, 2011

On March 27, 2011, Paul Amaro was driving his 1996 black Chevrolet Impala with his brother Aaron Amaro in the front seat, when Paul heard a "loud noise." Paul Amaro saw a man, whom he later identified as Huante in a photographic lineup, shooting at him and his brother. From a separate lineup, Paul Amaro identified Rivera as the driver of the car Huante was in. He did not know either Huante or Rivera. Paul Amaro had met Frankie Flores at a family party once and realized that they drove identical cars. Aaron Amaro was shot in the leg, had to have surgery, and was on crutches for two to three months.

## C
## The Murder of Frankie Flores and Attempted Murder of Michael Flores on April 14, 2011

On April 14, 2011, Frankie Flores drove himself and his brother Michael Flores in his black Impala to a strip mall. When they got to the strip mall, they stayed talking inside the car. A truck pulled up alongside them, and the driver (whom Michael Flores identified as Rivera) pulled out a gun. Michael Flores told his brother, "'That dude's got a gun. Start the car. Let's leave.'" Frankie Flores started up the Impala. Rivera hopped out of the truck, went up to the Impala's driver's side window, and asked if the driver was "'Frankie.'" Frankie said, "'No. You got the wrong person.'" Rivera called to his passenger in the truck (whom Michael Flores identified as Huante) and asked, "'Is that him?'" Huante got out of the truck and ran around to the back of the truck. Frankie Flores put his Impala in reverse, and as he did, Rivera started shooting. Michael Flores

got shot twice, through the mouth and in the forearm. Frankie Flores was shot six times, including fatal shots to his lung and heart. Frankie Flores died within minutes of being shot. According to Michael Flores, neither he nor his brother had a weapon on or near them at the time of the fatal shooting.

Valentino Hernandez and his mother, Toni Hernandez, saw the shooting while in their car at the strip mall's parking lot. Toni Hernandez heard Rivera say to Huante, "'Come here. Look at what this mother-fucker has on his lap.'" Later, Valentino Hernandez was talking with his mother and, according to Toni Hernandez, Valentino said, "'[one of the Flores brothers] had a gun on his lap.'"[FN1] They quickly drove out of the parking lot after the shooting started.

> FN1. The court instructed the jury to consider this statement for Valentino Hernandez's and Toni Hernandez's states of mind and not for the truth of the matter. Rivera testified at trial that passenger Michael Flores had what looked like a gun in his hand.

A ballistics expert determined that the expended bullets from the March 27 shooting and the April 14 shooting were discharged from the same firearm.

*People v. Rivera*, No. C074297, 184 Cal. Rptr. 3d 801, 803-04 (Cal. Ct. App. Mar. 9, 2015).

Following deliberations, the jury found Rivera guilty as charged and also found true all the enhancements.[2] Specifically, the jury found the murder to be in the first degree and found the attempted murders to be willful, deliberate and premeditated. The trial court subsequently sentenced Rivera to 25 years to life imprisonment for murder (Count 1), three consecutive life imprisonment terms for the three attempted murder convictions (Counts 2, 5, 6), plus two consecutive terms of 25 years to life for the personal discharge of a firearm enhancements on Counts 1 and 2.[3]

---

[2] The jury also found Huante guilty as charged, with all enhancements also found to be true.

[3] The trial court sentenced Huante to 25 years to life imprisonment for the murder (Count 1), three consecutive life imprisonment terms for the three attempted murder convictions (Counts 2, 5, 6), and a consecutive determinate term of 20 years for the personal discharge of a firearm enhancement attached to the attempted murder of the Amaro brothers.

3

Through counsel, Rivera appealed his conviction, arguing that: 1) trial counsel rendered ineffective assistance; 2) the trial court erred in dismissing a juror; and 3) the trial court erred in refusing to try separately the counts related to the Amaro shooting and those connected to the Flores shooting. The Court of Appeal unanimously affirmed the judgment against Rivera in a reasoned, partially-published opinion issued on March 9, 2015. *Rivera*, 184 Cal. Rptr. 3d at 808.[4] Rivera petitioned for review in the California Supreme Court, which was summarily denied on June 17, 2015.

Rivera timely filed a *pro se* Petition for a Writ of Habeas Corpus in this Court on April 19, 2016. Docket No. 1; *see* 28 U.S.C. § 2244(d)(1),(2). Rivera subsequently filed a Second Amended Petition, Docket No. 42 ("Petition"), which the Court, through a previously-assigned judge, dismissed in part upon Respondent's motion. Briefing on this case is now complete, and the remaining claims are now before the undersigned judge for adjudication.

## II. GROUNDS/CLAIMS

In his *pro se* Petition before this Court, Rivera argues that: 1) trial counsel rendered ineffective assistance by failing to introduce certain evidence that Rivera claims would support his self-defense theory; 2) the trial court erred in dismissing for hardship a juror who alleged that she was unable to perform her duties as a juror; and 3) his rights to due process and a fair trial were violated when the trial court consolidated the charges related to the Flores shooting with

---

[4] The Court of Appeal reversed Huante's conviction of first-degree murder because, under California law, Huante could not be convicted of first-degree premeditated murder as an aider and abetter under the natural and probable consequences theory. *Rivera*, 184 Cal. Rptr. 3d at 808. The appellate court ordered that the State could retry Huante on the premeditation and deliberation element, or accept a reduction of the conviction to second-degree murder. *Id*.

those alleged in connection with the Amaro shooting.[5] Rivera further requests an evidentiary hearing as to all claims.

## III. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2). A state-court decision is contrary to federal law if the state court applies a rule that contradicts controlling Supreme Court authority or "if the state court confronts a set of facts that are materially indistinguishable from a decision" of the Supreme Court, but nevertheless arrives at a different result. *Williams v. Taylor*, 529 U.S. 362, 406 (2000). The term unreasonable is a common term in the legal world. The Supreme Court has cautioned, however, that the range of reasonable judgments may depend in part on the nature of the relevant rule argued to be clearly established federal law. *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004) ("[E]valuating

---

[5] Notably, Rivera raised the wrongful joinder claim (listed above as Ground 3) only in his Initial Petition at Docket No. 1 and does not raise that claim in the Second Amended Petition at Docket No. 41, which is the operative Petition in this case. "It is hornbook law that an amended pleading supersedes the original, the latter being treated thereafter as non-existent. [ ] Once amended, the original no longer performs any function as a pleading[.]" *Doe v. Unocal Corp.*, 27 F. Supp. 2d 1174, 1180 (C.D. Cal. 1998) (quoting *Bullen v. De Bretteville*, 239 F.2d 824, 833 (9th Cir. 1956), *overruled on other grounds by Lacey v. Maricopa Cty.*, 693 F.3d 896 (9th Cir. 2012) (internal citations omitted)). It is not clear, however, that, by filing his Second Amended Petition, Rivera intended to abandon the claims raised in his earlier petition. Accordingly, given Rivera's *pro se* status, the Court liberally construes pursuant to *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam), Rivera's filings to retain the wrongful joinder claim raised only in his initial filing at Docket No. 1.

whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.").

The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision." *Id.* at 412. The holding must also be intended to be binding upon the states; that is, the decision must be based upon constitutional grounds, not on the supervisory power of the Supreme Court over federal courts. *Early v. Packer*, 537 U.S. 3, 10 (2002). Where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'" *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (citation omitted).

To the extent that the Petition raises issues of the proper application of state law, they are beyond the purview of this Court in a federal habeas proceeding. *See Swarthout v. Cooke*, 131 S. Ct. 859, 863 (2011) (per curiam) (holding that it is of no federal concern whether state law was correctly applied). It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal law. *See, e.g.*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (presuming that the state court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002).

In applying these standards on habeas review, this Court reviews the "last reasoned decision" by the state court. *See Robinson v. Ignacio,* 360 F.3d 1044, 1055 (9th Cir. 2004)

(citing *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002)). A summary denial is an adjudication on the merits and entitled to deference. *Harrington v. Richter*, 562 U.S. 86, 99 (2011). Under the AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

Rivera has not replied to Respondent's answer. The relevant statute provides that "[t]he allegations of a return to the writ of habeas corpus or of an answer to an order to show cause in a habeas corpus proceeding, if not traversed, shall be accepted as true except to the extent that the judge finds from the evidence that they are not true." 28 U.S.C. § 2248; *see also Carlson v. Landon*, 342 U.S. 524, 530 (1952). Where, as here, there is no traverse filed and no evidence offered to contradict the allegations of the return, the court must accept those allegations as true. *See Phillips v. Pitchess*, 451 F.2d 913, 919 (9th Cir. 1971).

## IV. DISCUSSION

**A.**  *Ineffective Assistance of Counsel* (Ground 1)

Rivera first argues that trial counsel rendered ineffective assistance by failing to introduce certain evidence that Rivera claims would support his self-defense theory. Specifically, Rivera faults counsel for failing to ask Valentino Hernandez whether there was a gun in the Impala.

To demonstrate ineffective assistance of counsel under *Strickland v. Washington*, a defendant must show both that counsel's performance was deficient and that the deficient performance prejudiced his defense. 466 U.S. 668, 687 (1984). A deficient performance is one

in which "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.*

The Supreme Court has explained that, if there is a reasonable probability that the outcome might have been different as a result of a legal error, the defendant has established prejudice and is entitled to relief. *Lafler v. Cooper*, 132 S. Ct. 1376, 1385-86 (2012); *Glover v. United States*, 531 U.S. 198, 203-04 (2001); *Williams*, 529 U.S. at 393-95. Where a habeas petition governed by AEDPA alleges ineffective assistance of counsel, the *Strickland* prejudice standard is applied and federal courts do not engage in a separate analysis applying the *Brecht* harmlessness standard. *Avila v. Galaza*, 297 F.3d 911, 918, n.7 (9th Cir. 2002); *see also Musalin v. Lamarque*, 555 F.3d 830, 834 (9th Cir. 2009). Under this rubric, in reviewing ineffective assistance of counsel claims in a federal habeas proceeding:

> The question "is not whether a federal court believes the state court's determination" under the *Strickland* standard "was incorrect but whether that determination was unreasonable—a substantially higher threshold." And, because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard.

*Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (citations omitted); *see also Runningeagle v. Ryan*, 686 F.3d 758, 775 (9th Cir. 2012).

Thus, Rivera must show that his trial counsel's representation was not within the range of competence demanded of attorneys in criminal cases, and there is a reasonable probability that, but for counsel's ineffectiveness, the result would have been different. *See Hill v. Lockhart,* 474 U.S. 52, 57 (1985). An ineffective assistance of counsel claim should be denied if the petitioner fails to make a sufficient showing under either of the *Strickland* prongs. *See Strickland*, 466

U.S. at 697 (courts may consider either prong of the test first and need not address both prongs if the defendant fails on one).

The California Court of Appeal considered and rejected Rivera's ineffective assistance claim on direct appeal as follows:

> Rivera contends his counsel was ineffective for failing to introduce evidence corroborating his self-defense claim. Specifically, he contends counsel should have asked Valentino Hernandez whether he saw or knew that one of the Flores brothers had a gun in his lap. [Rivera's] reasoning is as follows: if his trial counsel had asked Valentino Hernandez whether he saw a gun on the lap of one of the Flores brothers and if Valentino had answered "yes," such evidence would have tended to corroborated Rivera's testimony that Michael Flores pulled out a gun. If Valentino denied seeing a gun, defense counsel could have impeached Valentino with his statement to his mother that one of the Flores brothers "had a gun on his lap." We disagree, because counsel had a tactical reason for proceeding the way he did. (*See People v. Frierson* (1979) 25 Cal.3d 142, 158 [a reasonable tactical decision does not constitute ineffective assistance of counsel].)
>
> The evidence on the gun was as follows: It was undisputed at trial that Valentino Hernandez and his mother were in their car during the entire incident. Thus, it was reasonable inference that neither one of them could have seen anything on the laps of the Flores brothers. Moreover, Rivera's defense counsel was aware of the statement Valentino made to his mother, Toni (that "'he has a gun on his lap'") and counsel elicited this evidence during his cross-examination of Toni Hernandez. This trial tactic allowed counsel to put the statement before the jury without the possibility that Valentino might have testified in court that he did not see a gun on the lap of anyone in the Flores car. Given the state of the evidence, counsel was not ineffective for proceeding as he did.

Rivera fares no better on federal habeas review. The determination of the Court of Appeal is both reasonable and fully supported by the record. Rivera is not entitled to relief on this claim.

**B.** *Juror Discharge* (Ground 2)

Rivera next argues that the trial court erred in excusing Juror No. 8 after she told the court that her employer would not continue to pay her for jury service, which would cause her family financial hardship. According to Rivera, the record did not establish good cause to excuse the juror rather than have her continue to deliberate for a day or two more.

9

As an initial matter, it should be noted that Rivera's trial was fairly lengthy. The record reflects that the jury retired to deliberate on the fifteenth day of trial. On the sixteenth day, Juror No. 8 sent the following note to the court: "I will not be paid starting tomorrow from work + it will cause a hardship at home financially." When asked by the court whether "serving on the jury after tomorrow, [without] getting paid by [her] employer, would . . . affect [her] ability to carry out [her] duties as a juror," Juror No. 8 replied, "Yes," "[b]ecause I would be constantly thinking about not being able to pay our bills." The court then asked Juror No. 8 to wait outside. After describing Juror No. 8's demeanor as "very tense, nervous, and tightening up as she was explaining her position," the court dismissed her from service, finding "a demonstrable reality that her ability to deliberate fairly [wa]s substantially impaired."

Although it may be improper to remove a juror for cause when that cause is lacking, that alleged cause typically relates to a juror's supposed bias or some other connection to the case. *See, e.g.*, *Wainwright v. Witt*, 469 U.S. 412 (1985); *see also Uttecht v. Brown*, 551 U.S. 1 (2007). But the Court is unaware of any case finding improper a trial court acquiesing in a juror's statement alleging hardship that would affect the juror's ability to carry out her duties, and Rivera does not cite any. Indeed, the United States Supreme Court has held that "[s]tates are free to grant exemptions from jury service to individuals in case of special hardship or incapacity and to those engaged in particular occupations the uninterrupted performance of which is critical to the community's welfare." *See Taylor v. Louisiana*, 419 U.S. 522, 534 (1975) (quoting *Rawlins v. Georgia*, 201 U.S. 638 (1906)).

In any event, the trial court reasonably determined that Juror No. 8's claimed financial hardship warranted her being excused from jury service. *See Thiel v. S. Pac. Co.*, 328 U.S. 218,

10

224 (1946) (holding that court "would be justified in excusing a daily wage earner for whom jury service would entail an undue financial hardship"); *see also United States v. Echavarria–Olarte*, 904 F.2d 1391, 1395 (9th Cir. 1990) (whether juror's financial hardship warranted excusal is "peculiarly suited to the exercise of discretion by the trial judge"). Rivera is therefore not entitled to relief on this claim in any event.

C. *Wrongful Joinder* (Ground 3)

Finally, Rivera claims that the trial court erred when it granted the People's motion to consolidate the charges relating to the attempted murder of the Amaro brothers with those connected to the Flores murder. According to Rivera, his guilt in the Amaro shooting was "very weak," and his guilt of the Flores shooting was "comparatively stronger." Rivera contends that the jury's hearing evidence relating to both events presented "a danger that the aggregate evidence on the charges altered the outcome of the case."

Improper joinder in itself does not violate the Constitution. *United States v. Lane*, 474 U.S. 438, 446 n.8 (1986). In *Lane*, the Supreme Court stated in a footnote that "[i]mproper joinder does not, in itself, violate the Constitution. Rather, misjoinder would rise to the level of a constitutional violation only if it results in prejudice so great as to deny a defendant his Fifth Amendment right to a fair trial." *Id.* The Ninth Circuit subsequently stated in an unpublished opinion:

> *Lane* considered only the effect of misjoinder under Federal Rule of Criminal Procedure 8, and expressly stated that no constitutional claim had been presented. *See Lane*, 474 U.S. 438, 446 & n.9, 106 S.Ct. 725, 88 L.Ed.2d 814 (1986). Thus, Lane's broad statement—found in a footnote without citation to any legal authority—that misjoinder could only rise to the level of a constitutional violation if it was so prejudicial as to violate due process, was probably dictum. Only Supreme Court holdings are controlling when reviewing state court holdings under 28 U.S.C. § 2254; Court dicta and

circuit court authority may not provide the basis for granting habeas relief. *Lockyer v. Andrade*, 538 U.S. 63, 71-72, 123 S. Ct. 1166, 155 L.Ed.2d 144 (2003).

*Young v. Pliler*, 273 F. App'x 670, 672 n.1 (9th Cir. 2008); *see also Collins v. Runnels*, 603 F.3d 1127, 1132-33 (9th Cir. 2010).

In ascertaining what is "clearly established Federal law," this Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." *Williams*, 529 U.S. at 412. "In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Id.* Given that there is no clearly established Federal law in this instance, this Court cannot grant relief, since habeas relief is warranted only when the state court adjudication runs afoul of clearly established federal law. *See Moses v. Payne*, 555 F.3d 742, 754 (9th Cir. 2009) (absent a Supreme Court decision that squarely addresses the issue, it "cannot be said, under AEDPA, there is 'clearly established' Supreme Court precedent . . . and so we must defer to the state court's decision").

In any event, the state courts reasonably rejected Rivera's claim. *See Young*, 273 F. App'x at 672 (assuming *Lane* provided the relevant Supreme Court precedent to reach the merits of petitioner's claim that joinder of murder charge and assaults charges violated his constitutional rights). A joinder, or denial of severance, of counts may rise to a constitutional violation if it results in prejudice great enough to render the trial fundamentally unfair. *Grisby v. Blodgett*, 130 F.3d 365, 370 (9th Cir. 1997). There is a "high risk of undue prejudice whenever . . . joinder of counts allows evidence of other crimes to be introduced in a trial of charges with respect to which the evidence would otherwise be inadmissible." *United States v. Lewis*, 787 F.2d 1318, 1322 (9th Cir. 1986) (quoting *United States v. Daniels*, 770 F.2d 1111, 1116 (D.C.

12

Cir. 1985)). But joinder generally does not result in prejudice if the evidence of each crime is simple and distinct (even if the evidence is not cross-admissible), and the jury is properly instructed so that it may compartmentalize the evidence. *Bean v. Calderon*, 163 F.3d 1073, 1085-86 (9th Cir. 1998).

Even assuming, arguendo, that the Supreme Court's footnote in *Lane* could be considered clearly established Federal law, no constitutional violation occurred in this case because the prejudice was not so great as to deny Rivera his right to a fair trial. In affirming the trial court's consolidation of the charges, the Court of Appeal determined:

> The evidence was cross-admissible. The attempted murder of the Amaro brothers and the Frankie Flores murder were based on the same motive--revenge for a drug robbery. At the time the trial court was considering the consolidation motion, the state of the evidence as established during two preliminary hearings was as follows: the victims in the Frankie Flores murder case had "ripped off drugs . . . from one of the defendants." Then, "defendants wanted to retaliate. And after that they began looking for the victim." "They saw a vehicle that matched the victim's vehicle and opened up fire on the victim." That victim, one of the Amaro brothers, identified defendants as the shooters. That was the attempted murder case. Two weeks after these attempted murders, defendants see Frankie Flores in the parking lot "driving the exact same car that the attempt[ed] murder victim[s] [i.e., the Amaro brothers] w[ere] driving." Defendants "get into a confrontation at that parking lot, begin yelling that they want their money back. They want their drugs back. And then they end up opening fire on the victims inside that vehicle, which is the murder case. And they end up killing one of the individuals in there." "[T]hose bullets end up being matched up to the attempt[ed] murder just a few weeks before."
> Given that the crimes were of the same class and the evidence was cross-admissible, defendants have failed to make a """clear showing of prejudice.""" *(People v. Thomas, supra,* 53 Cal.4th at p. 798.) There was no abuse of discretion.

The appellate court's determination is reasonable and fully supported by the record, and comports with applicable federal law. *See Davis v. Woodford*, 384 F.3d 628, 638-39 (9th Cir. 2004) (denial of motion to sever trial of capital and noncapital charges based on separate incidents not a violation of due process because evidence was cross-admissible, the weight of evidence with respect to each incident was roughly equal, the evidence as to each incident was

13

distinct, and the jury was properly instructed); *Sandoval v. Calderon*, 241 F.3d 765, 773 (9th Cir. 2001) (given the strength of the prosecution's case against petitioner on both sets of murders and the cross-admissibility of the evidence on each set, petitioner's trial was not actually prejudiced by the joinder). Accordingly, Rivera's improper joinder claim does not merit federal habeas relief.

**D.**     ***Request for Evidentiary Hearing***

Rivera further requests that this Court hold an evidentiary hearing as to all claims raised in his Petition. A district court may not hold an evidentiary hearing on a claim for which a petitioner failed to develop a factual basis in state court unless the petitioner shows that: (1) the claim relies either on (a) a new rule of constitutional law that the Supreme Court has made retroactive to cases on collateral review, or (b) a factual predicate that could not have been previously discovered through the exercise of due diligence, and (2) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable fact finder would have found the petitioner guilty of the underlying offense. 28 U.S.C. § 2254(e)(2).

Where the failure to develop the factual basis for the claim in the state court proceedings is not attributable to the petitioner, to receive an evidentiary hearing, the petitioner must make a colorable claim for relief and meet one of the factors set forth in *Townsend v. Sain*, 372 U.S. 293 (1963). *Insyxiengmay v. Morgan*, 403 F.3d 657, 670-71 (9th Cir. 2005). In *Townsend*, the Supreme Court concluded that a federal habeas petitioner is entitled to an evidentiary hearing on his factual allegations if: (1) the merits of the factual dispute were not resolved in the state hearing; (2) the state factual determination is not fairly supported by the record as a whole;

(3) the fact-finding procedure employed by the state court was not adequate to afford a full and fair hearing; (4) there is a substantial allegation of newly discovered evidence; (5) the material facts were not adequately developed at the state-court hearing; or (6) for any reason it appears that the state trier of fact did not afford the habeas applicant a full and fair fact hearing. *Id.* at 670 (quoting *Townsend*, 372 U.S. at 313), *overruled in part by Keeney v. Tamayo-Reyes*, 504 U.S. 1 (1992), *superseded by statute as stated in Williams v. Taylor*, 529 U.S. 420 (2000).

As discussed above, Rivera has failed to assert a colorable claim for relief. *See Bashor v. Risley*, 730 F.2d 1228, 1233 (9th Cir. 1984) (holding an evidentiary hearing is not required on issues which can be resolved on the basis of the state court record). Because he does not cite to new laws or underlying facts that were not developed on the record before the state courts with respect to this claim, he has also failed to satisfy his burden of proof under 28 U.S.C. § 2254(e)(2). Rivera's request for an evidentiary hearing must therefore also be denied.

## V. CONCLUSION AND ORDER

Rivera is not entitled to relief on any ground raised in his Petition, nor is he entitled to an evidentiary hearing.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the request for an evidentiary hearing is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability. *See* 28 U.S.C. § 2253(c); *Banks v. Dretke*, 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree

with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El*, 537 U.S. at 327)).  Any further request for a Certificate of Appealability must be addressed to the Ninth Circuit Court of Appeals.  *See* FED. R. APP. P. 22(b); 9TH CIR. R. 22-1.

The Clerk of the Court is to enter judgment accordingly.

Dated: May 14, 2021.

                                                   /s/James K. Singleton, Jr.
                                                   JAMES K. SINGLETON, JR.
                                                   Senior United States District Judge